C. A. Sporl & Company, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 90354.   Promulgated October 31, 1939.

*Arthur A. Moreno, Esq.*, and *F. W. Gaudin, Esq.*, for the petitioner.
*Joe D. Hughes, Esq.*, and *William P. Blake, Esq.*, for the respondent.

OPINION.

Smith: This proceeding is for the redetermination of deficiencies in income and excess profits taxes for 1933 of $4,885.66 and $1,244.49, respectively. The question in issue is whether the petitioner sustained a deductible loss of $39,100 in 1933 on the sale to its president, Cyprian A. Sporl, Sr., of $46,000 par value second mortgage bonds of the Shipside Storage Co.

C. A. Sporl & Co., is a Louisiana corporation, with its principal office in New Orleans. It is engaged in the insurance brokerage business. Upon its organization it took over the business of a predecessor partnership.

One of its principal customers was the Jahncke Dry Docks, Inc., a Delaware corporation organized in 1922. The petitioner placed many policies of insurance for the Jahncke Dry Docks, Inc., charging that company with the full amount of the premiums thereon. Under its contracts with the insurance companies the petitioner was required to remit to them the premiums called for in the policies, less commissions, at varying rates for different types of insurance.

In September 1931 the petitioner was a general creditor of the Jahncke Dry Docks, Inc., in the amount of $70,935.58. On or about September 8, 1931, the Jahncke Dry Docks, Inc., informed its general creditors that it could not immediately pay the full amount of its indebtedness to them; that it contemplated selling its dry dock and ship repair equipment, and also its wharf, and expected to raise enough funds from the sale to pay off a part of its first mortgage bonds, leaving a balance of only $300,000; that it would then have on hand enough cash to pay its general creditors about 20 cents on the dollar; and that it would then issue second mortgage bonds bearing 6 percent interest for the balance of the creditors' claims. Petitioner was advised that if this proposition was not acceptable to its general creditors there was nothing left for the company to do except permit a foreclosure of the first mortgage, which would entirely wipe out the equity of the general creditors.

On September 18, 1931, the petitioner wrote to the Jahncke Dry Docks, Inc., as follows:

Replying to your letter dated Sept. 8, 1931, we hereby agree to the plan proposed therein and will accept in settlement of our unsecured claim against your Company, after crediting the cash which will be paid to us out of free assets, mortgage bonds as set out in your letter. This agreement shall not become effective until similar agreements are executed by the holders of at least ninety (90%) per cent in principal amount of the ordinary claims against your Company.

Shortly thereafter the petitioner's officers were orally advised that more than 90 percent of the general creditors had accepted the proposition and that the contemplated plan of settlement would be carried into effect. On October 13, 1931, the petitioner received $14,235.58 cash under the plan. The name "Jahncke Dry Docks, Inc." was then changed to "Shipside Storage Co., Inc.," and that company, pursuant to the plan, issued $233,400 of 6 percent mortgage bonds dated January 1, 1932, and in February 1932 delivered $56,700 par value of the bonds in fulfillment of its agreement. It also at about the same time paid the petitioner interest upon $56,700 of its claim from October 13, 1931, to December 31, 1931.

Upon receipt of the bonds the petitioner turned over to the insurance companies $10,700 of the bonds to settle a like amount of their claim against the petitioner. The bonds were accepted by the insurance companies at their par value.

On December 26, 1933, the petitioner sold the balance of the Shipside Storage Co. second mortgage bonds which it then had on hand, consisting of 46 bonds of a par value of $1,000 each, to C. A. Sporl, Sr., its president, for $6,900. This was the fair market value of the bonds at that time. The bonds had first been offered for sale through a reputable broker, but the broker was unable to receive any offers for them.

In its income tax return for 1933 the petitioner claimed the deduction of a loss of $39,100, which the respondent disallowed upon the ground that the bonds were not capital assets and therefore the loss on their sale was not deductible under the limitation of section 23 (r) of the Revenue Act of 1932. This section of the statute reads in part as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

 *  *  *  *  *  *  *

(r) LIMITATION OF STOCK LOSSES.—

(1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in section 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).

Section 101 (c) (8) provides in part:

(c) DEFINITIONS.—For the purposes of this title—

\* \* \* \* \* \* \*

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \* \* \*

The respondent raises the question as to whether the sale of the bonds by the petitioner to its president was at the fair market value, but the evidence conclusively shows that it was. The issue must, therefore, turn on whether the bonds were held by the petitioner for the statutory two-year period. The period for which the bonds were "held" dates from the time that they were acquired by the petitioner, *McFeely* v. *Commissioner*, 296 U. S. 102. To come within the two-year period essential to their classification as capital assets the bonds which the petitioner sold on December 26, 1933, must have been acquired on or before December 26, 1931. It is the contention of the petitioner that it acquired the bonds in October 1931, upon the execution of the creditors' agreement, although the bonds were not issued by the Shipside Storage Co. until after January 1, 1932.

\* \* \* As between the parties, \* \* \* the question of whether or not title has passed to the buyer, and, if so, when, depend upon the intention of the parties manifested at the time of the transaction or the making of the bargain. \* \* \* [55 C. J., sec. 531.]

See also *Charles C. Hanson*, 23 B. T. A. 590. Cf. *R. A. Shillinglaw*, 32 B. T. A. 1235; affd., 99 Fed. (2d) 87.

A case somewhat like this (but having a different issue) is *Fordyce* v. *Helvering*, 76 Fed. (2d) 431, where an exchange agreement was to become effective when a certain amount of stock was deposited or upon a declaration by one of the companies that the plan was effective. A declaration was made on November 13, 1929, and the court held that to be the basic date even though the stock to be given in exchange was not required to be delivered until a later date.

We have no doubt from a consideration of all of the evidence that it was the intention of the parties concerned that after October 13, 1931, the petitioner was not a general creditor of the Shipside Storage Co. in the amount of $56,700; that it had definitely obligated itself to receive in lieu thereof second mortgage bonds of the Shipside Storage Co. of a par value of $56,700. We think that the date of acquisition of these bonds related back to the date when the contract was entered into between the parties. The loss sustained by the petitioner upon the sale of the $46,000 par value of the bonds was $39,100. That loss was sustained upon a sale of capital assets and

the limitation upon the deduction of losses imposed by section 23 (r) of the statute does not apply.

The reason given by the respondent in his deficiency notice for disallowing the loss is as follows:

It is held that the loss occurred in 1932 at the time when delivery was made to you of the bonds in question, which, according to the records of the corporation issuing them, were worth less than face value. Your protest, executed October 26, 1935, paragraph 3, affirms that you accepted the said bonds in the year 1932; accordingly, the Bureau holds that the revenue agent correctly disallowed the loss as having occurred in the year 1933.

In addition to the above and relative to your contention that the loss was sustained in 1933, your attention is called to the following:

I. No evidence has been furnished as to the 1933 fair market value of the bonds, or that the sale was for a fair market price.

II. Losses from the sale of bonds which are not capital assets are deductible only to the extent of the gains from such sales. Section 23 (r) of the Revenue Act of 1932.

At the hearing of this proceeding the petitioner submitted evidence to overcome points raised by the respondent in his deficiency notice. The income tax returns of the petitioner for 1932 and 1933 were submitted in evidence and they show that those returns were made upon a cash receipts and disbursements basis. By virtue of this fact the respondent contends that the petitioner has not shown the cost to it of the $46,000 second mortgage bonds sold to its president on December 26, 1933, and that therefore the petitioner is not entitled to the deduction of the claimed loss.

It is true that the petitioner has not met or attempted to meet this contention of the respondent. We do not know whether the petitioner included in its gross income of 1931 or 1932 the $56,700 of second mortgage bonds which it received from the Shipside Storage Co. We think, however, that the bonds constituted taxable income of the petitioner either in 1931 or 1932. They were accepted by the petitioner in satisfaction of its claim against the Shipside Storage Co. If they were not so included, the $6,900 received upon the sale in December 1933 constituted additional taxable income of 1933. The respondent has not so contended.

Since the issue as to the cost to the petitioner of the bonds in question, as distinguished from their value at the date of receipt, was not raised by the respondent in the deficiency notice, and since the evidence shows that the $56,700 face value of bonds were received by the petitioner in exchange for an open account of equal amount, we are of the opinion that the cost of the bonds to the petitioner was $56,700.

The entire deficiencies for 1933 result from the disallowance of the claimed loss of $39,100.

*Decision of no deficiency will be entered.*