Hemenway-Johnson Furniture Company, Inc. v. Commissioner.
Hemenway-Johnson Furniture Co. v. Commissioner
Docket Nos. 23959, 23960.
United States Tax Court
1951 Tax Ct. Memo LEXIS 369; 10 T.C.M. (CCH) 1; T.C.M. (RIA) 51003; January 4, 1951
Laurence F. Casey, Esq., for the petitioner. Stanley B. Anderson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in excess profits tax for the fiscal years ended on March 31 of 1944, 1945, and 1946, as follows: 1944
1945
1946
Docket No. 23959
$3,076.41
$5,182.22
Docket No. 23960
$6,712.22
The only question to be decided is whether or not the respondent erred in making an adjustment of the petitioner's excess profits credit under section 713 (g) (4) of the Internal Revenue Code on account of an alleged reduction of capital. The petitioner had 4,184 shares of $100 par value preferred stock outstanding during its fiscal year which ended on March 31, 1940. In March *370 of 1940 the petitioner's stockholders approved the issuance of debentures in exchange for all of the outstanding preferred stock. The respondent has determined that the preferred stock was retired on April 1, 1940, which is the first day of the first fiscal year of the petitioner which is subject to the imposition of the excess profits tax which was enacted by the Second Revenue Act of 1940, which was approved on October 8, 1940. Under that determination the respondent applied the provisions of section 713(a)(1)(C), and has adjusted the excess profits credit based on income by subtracting 6 per cent of $418,400 from the result of the computation of 95 per cent of petitioner's average base period net income. The petitioner contends that there was a reduction of its capital to the extent of $418,400 prior to April 1, 1940, and that, therefore, the respondent erred in his determination that the reduction in capital occurred on April 1, 1940, and in applying subsection (C) of section 713(a)(1) to the reduction in capital which is in question. The petitioner contends that its excess profits credit in each of the taxable years should not be decreased by $25,104, representing 6 per cent *371 of $418,400. The question is raised by the following pleading in the petition: "Respondent erred in determining that Petitioner's retirement of its preferred stock and its creation of liabilities evidenced by its debentures, occurred after the beginning of Petitioner's first excess profits tax taxable year." Other adjustments which have been made by the respondent are conceded by the petitioner to be correct. If the petitioner's contention under the issue to be decided should be sustained, it will follow that the petitioner is entitled to compute its excess profits tax according to the average income method, and under that method the petitioner claims that it has overpaid the excess profits tax for its fiscal years ended on March 31 of 1944 and 1945 to the extent of $6,849.96 and $3,296.43, respectively. The petitioner filed its returns with the collector for the district of Louisiana. The record comprises testimony, exhibits, and a stipulation of some of the facts. Findings of Fact The facts which have been stipulated are found as facts. The petitioner, a Louisiana corporation, was organized in 1931 under the name of Hemenway, Inc. Its name was changed to Hemenway-Johnson *372 Furniture, Inc., in 1939 after the purchase of the assets of Johnson Furniture Company. The petitioner maintains an office at Alexandria, Louisiana, and operates a store at Shreveport, Louisiana. Petitioner's president is Frank Hemenway, Jr. Petitioner is engaged in the business of buying and selling furniture. In 1931, its paid-in capital amounted to $120,000 which represented 1,000 shares of 8 per cent cumulative preferred stock having a par value of $100 per share, and 2,000 shares of no par value common stock. The Johnson Furniture Company operated a store in Shreveport, Louisiana, in competition with the store of petitioner in the same city, and its principal officers were Frank Johnson and J. R. C. Moseley. In 1939, the lease on the property in Shreveport where petitioner's store was about to expire and the petitioner's officers gave consideration to the advisability of surrendering the lease, if the petitioner's business could be merged with that of Johnson Furniture Company. Petitioner's officers learned that the owners of Johnson Furniture Company wanted to retire from business. Early in 1939, Frank Hemenway, Jr., discussed the matter of purchasing the assets of Johnson *373 Furniture Company with Johnson and Moseley, and they agreed upon a price of about $584,000 for the sale of the assets of Johnson Furniture Company. [1] Moseley and Johnson preferred cash payment of the entire purchase price but were willing to accept about $250,000 in notes of petitioner, and $334,000 in cash. It was necessary for the petitioner to obtain a bank loan of at least $334,000 in order to consummate the contemplated purchase of Johnson Furniture Company. Petitioner's bank refused to make the loan if the petitioner became indebted on its own notes to Johnson and Moseley in the amount of $250,000, but it was willing to make the loan of $334,000 if petitioner would agree to repay the bank by January of 1940, and if petitioner would agree to issue its preferred stock for the balance of the purchase price. Because of the bank's requirements, Johnson and Moseley and P. H. Corbett, a creditor of the petitioner, agreed to take $350,000 of petitioner's preferred stock - $250,000 to be issued to Johnson and Moseley, and $100,000 *374 to be issued to Corbett. However, Johnson and Moseley agreed to take preferred stock only under the condition that the petitioner would call in the preferred stock in exchange for its notes at the earliest possible time. The petitioner so agreed. Shortly after June 1, 1939, the petitioner issued 2,500 shares of preferred stock to Johnson Furniture Company, and 1,000 shares to P. H. Corbett, and the bank loaned $334,000 to the petitioner. The issuance of the preferred stock was first authorized by an amendment of petitioner's charter. Under the amendment, the authorized capital of the petitioner was 4,200 shares of $100 par value, 8 per cent preferred stock; 50,000 shares of no par value voting common stock; and 30,000 shares of no par value nonvoting common stock. The sale of the assets of Johnson Furniture Company to the petitioner was consummated on June 5, 1939. Thereafter, there were outstanding 4,184 shares of the preferred stock of the petitioner, which was held as follows: F. S. Hemenway, Sr.
350 shares
Alfred Wettermark
142 shares
A. W. Berdon
100 shares
Louise Hemenway
52 shares
M. McIntosh
40 shares
684 shares
Johnson Furniture Co.
2,500 shares
P. H. Corbett
1,000 shares
Total
4,184 shares
*375 Prior to June 5, 1939, 684 shares of petitioner's preferred stock were outstanding. On October 13, 1939, the dividend dates of the preferred stock were changed, by corporate action, from June 1 and December 1 to March 30 and September 30, in order that one dividend payment would come within petitioner's fiscal year. Toward the end of 1939, the officers of the petitioner knew that the bank loan of $334,000 could be repaid in full by January of 1940. It was repaid in January of 1940. Having agreed with Johnson and Moseley to call in their preferred stock at the earliest possible time, Frank Hemenway discussed the matter with the several holders of the preferred stock. Johnson and Moseley preferred the issuance of petitioner's notes in exchange for their preferred stock, but finally agreed to take 8 per cent, 30-year debentures. Corbett and other owners of preferred stock were agreeable to the issuance of 30-year debentures in exchange for the preferred stock. Accordingly, early in 1940, petitioner's officers worked out informally a plan to retire the preferred stock and to issue 30-year, 8 per cent debentures. Since March 30 was a dividend date, petitioner's officers understood *376 that the preferred stock could be retired by the end of petitioner's fiscal year, which ended on March 31, without the payment of further dividends after March 30. Furthermore, petitioner's officers were anxious to carry out the plan during the fiscal year so as to avoid showing in the annual statement of the petitioner for the fiscal year ending on March 31, 1940, that between April 1, 1939, and March 31, 1940, there had been both an increase and a reduction in capital represented by the preferred stock, followed by the issuance of debentures in the place of preferred stock. At the time of the merger of the businesses of the petitioner and Johnson Furniture Company, the creditors of both concerns demonstrated a desire to know the details of the merger. Frank Hemenway was reluctant to reveal all of the details, and in keeping with that desire, he wanted the last step, i.e., the retirement of the preferred stock in exchange for debentures, to be completed before the end of the fiscal year, so that the annual statement of the petitioner, for the fiscal year ending on March 31, 1940, which would be available to creditors, would not reveal all of the details, and, in particular, the issuance *377 of 3,500 shares of preferred stock for a period of less than twelve months. On March 27, 1940, meetings were held of the preferred and common stockholders of the petitioner and of its board of directors to formally adopt resolutions to amend petitioner's charter to authorize the issuance of 8 per cent debentures in exchange for the outstanding preferred stock, and to authorize the president and secretary to issue the new debentures. Prior to the meetings, the proposed amendments to the charter were submitted to the stockholders, including the owners of the preferred stock, and all of the owners of the preferred stock agreed in writing to surrender their preferred stock for cancellation and to accept therefor, in lieu of money, a like amount of 8 per cent debentures to be issued in accordance with the proposed amendments to the charter. Also, prior to the meeting, other steps were taken by the petitioner, as follows: On March 20, 1940, the ledger account for preferred stock dividends was debited with the charge for the total amount of the semi-annual dividend on the preferred stock which was payable on March 30. Checks of petitioner for the semi-annual preferred stock dividend were *378 written, dated March 27, and made payable to the owners of the outstanding preferred stock. The new debenture bonds were ordered. Formal notice to the preferred stockholders to surrender their certificates of preferred stock for cancellation was prepared. At the stockholders' meeting on March 27, 1940, all of the owners of the outstanding preferred stock were present excepting two who owned 152 shares, who were represented by proxies. All of the common stockholders were present excepting three who were represented by proxies. A resolution was adopted to amend the charter. The amendments to the charter provided inter alia, that the capital stock of the corporation should consist of 50,000 shares of voting common stock, and 30,000 shares of nonvoting common stock, both of no par value; and that the board of directors were authorized to issue not to exceed $420,000, 8 per cent, 30-year debentures in multiples of $100 each. The new charter provisions relating to the debentures provided, inter alia, that the bonds could be called and paid prior to April 1, 1970; that interest should be payable semi-annually on the first of April and October; that it should be cumulative from the date *379 of issuance; that the bonds should be dated and issued on April 1, 1940; and that the bonds could be exchanged for voting common stock if a majority of the holders of debentures should vote to require the corporation to exchange the debentures for common stock. At the meeting on March 27, another resolution was adopted instructing the president and the secretary of the corporation to appear before a Notary Public and to sign and execute before him the articles of amendment of the charter. On the same day, the board of directors met and adopted a resolution to give the preferred stockholders formal notice to surrender their preferred stock for cancellation and to advise them that checks for the semi-annual dividend on the preferred stock would be sent to them. Another resolution authorizing the president and secretary to issue the newly authorized debentures in amounts equal to the then outstanding preferred stock was adopted. Pursuant to the foregoing authorization, petitioner's president and secretary, on March 27, 1940, appeared before a Notary Public in Rapides Parish, Louisiana, and executed and declared the articles of amendment of petitioner's charter. The articles of amendment *380 of the petitioner's charter were filed with the Clerk of the Court and Recorder for Rapides Parish on March 28, 1940, and were recorded by him on the same day. They were filed with the Secretary of the State of Louisiana on March 29, 1940, and he issued, on the same day, his certificate of the filing of the charter amendments. The certificate of the Secretary of State is copied in the margin. [2]
*381 Immediately following the stockholders' meeting on March 27, 1940, the checks for the preferred stock dividends were, on March 27, mailed or delivered by hand to the holders of the preferred stock, and the formal notice to surrender the certificates for preferred stock were mailed or delivered by hand. By March 30, 1940, Frank Hemenway, Jr., had received and canceled all of the outstanding preferred stock certificates excepting those owned by P. H. Corbett. The certificates for the new debentures were received from the printer on March 29, 1940, and they were signed by petitioner's president and secretary on March 29 or March 30. On the 29th or the 30th of March, Hemenway mailed debentures to Johnson Furniture Company and A. W. Berdon; and he delivered debentures to F. S. Hemenway, Sr., Louise Hemenway, M. McIntosh, and Alfred Wettermark. Hemenway gave instructions for delivery of P. H. Corbett's debentures upon receipt of his certificates for preferred stock. Corbett's certificates for preferred stock were canceled on April 3, 1940. The petitioner held, on March 27, 1940, Corbett's agreement to surrender his 1,000 shares of preferred stock in exchange for $100,000 of debentures. *382 On March 30, 1940, the bookkeeper of petitioner closed the ledger account for preferred stock by a debit entry of $418,400. On the same day, he made a closing entry in the ledger account for preferred stock dividends, and he opened a new ledger account for the new debentures in which he made seven entries crediting each one of the former holders of preferred stock, including P. H. Corbett, with debtentures in the same amount as their prior holdings of preferred stock, all of which entries totaled $418,400. The balance sheet of the petitioner for its fiscal year ended March 31, 1940, included in liabilities $418,400 of debentures, and the only outstanding stock shown in the capital account was common stock. Ultimate Findings of Fact It was the intention of the common and preferred stockholders of the petitioner that all of the outstanding preferred stock should be retired at the close of March 30, 1940, on which date the final dividend was payable and had been paid. It was also their intention that there should not be an overlapping of one day's charge for debenture interest with one day's charge for dividends. All of the holders of preferred stock having agreed in writing on *383 or before March 27 to surrender their preferred stock in exchange for debentures in like amount, and all of such debentures having been issued by the duly authorized officers of the petitioner on March 30, 1940, it is found as a fact that $418,400 of debentures were issued by the petitioner on March 30, 1940, in exchange for 4,184 shares of preferred stock, which stock was effectively retired prior to April 1, 1940. Opinion The question is whether a reduction of $418,400 in petitioner's capital stock occurred before April 1, 1940, which was the first day of petitioner's first fiscal year subject to the excess profits tax. Under section 713(a)(1)(C) of the Code, the amount of the excess profits credit based on income to which a taxpayer is entitled must be reduced by 6 per cent of the taxpayer's net capital reduction occurring "after the beginning of the taxpayer's first [excess profits tax] taxable year." Section 713(g)(4). The petitioner contends that the reduction of its capital occurred before April 1, 1940. The purpose of section 713(a)(1)(C) is to reduce the excess profits credit based on average income during the base period to which a corporation is entitled by 6 per *384 cent of the net equity capital which it removes from the business after the beginning of the first year in which the corporation was subject to the excess profits tax. The pivotal year in this proceeding was the fiscal year beginning April 1, 1940. From our examination of the evidence presented, we have concluded that on April 1, 1940, petitioner's capital structure no longer included $418,400 in preferred stock. At all times material to this proceeding, petitioner kept its books and filed its returns on the basis of a fiscal year which began on April 1 of one year and ended on March 31 of the succeeding year. Toward the end of the fiscal year which began on April 1, 1939, and ended on March 31, 1940, petitioner's stockholders decided to effect a change in its capital structure. This decision was effectuated by securing the agreement, before March 27, 1940, of all the holders of preferred stock to surrender their preferred stock for a like amount of debentures; by amending the corporate charter on March 29, 1940; and by complying with the statutory requisites for a reduction in capital stock, all of which was done before March 31, 1940. Beginning with the now fiscal year on April 1, 1940, petitioner *385 had outstanding debenture bonds in the amount of $418,400 which had replaced preferred stock of equal par value. The evidence shows beyond any doubt and clearly that it was the intention of all of the preferred and common stockholders that all of the preferred stock should be retired before March 31, 1940, the end of the fiscal year. Intent must be given considerable weight. Commissioner v. Philadelphia Transit Co., 174 Fed. (2d) 255, affd., 338 U.S. 883, and C. A. Sporl & Co., Inc., 40 B.T.A. 829, affd., 118 Fed. (2d) 283. The respondent's contention is based primarily upon the matter of the dating of the debentures. They bore the date April 1, 1940, and interest was payable on October 1 and April 1. Respondent's position is too narrow. The petitioner's officers took into account the respective periods of dividend payments on the cumulative preferred stock which the stockholders desired to retire, and of the interest payments on the new debentures, and believed that they were proceeding in the customary way of dealing with the picking up of a new interest period which was to follow directly after the ending of a dividend period, *386 and that the fixing of April 1 as the day upon which debenture interest would become payable was the necessary consequence of closing out the preferred stock dividend account for dividends payable on March 30. In other words, they desired to avoid any obligation to pay interest twice for the last day of March, which was also the last day of petitioner's fiscal year. Upon payment of dividends on the preferred stock to and including March 30, debenture interest payable on the first of October, six months later, would include interest for the day of April 1; and the payment of interest on April 1 of the succeeding year would include interest for the day of March 31 of the succeeding year. The officers of the petitioner were not attempting to gain any advantage tax-wise by their arrangements which were made prior to the enactment of the excess profits tax legislation. It is a fact that all of the debentures were delivered on March 29 or 30 to six of the seven holders of preferred stock, and that on March 30, 1940, entries were made on petitioner's books to the credit of each of the seven persons who had agreed to take the new debentures, including P. H. Corbett, for their debentures. There *387 were a few days' delay in the delivery of debentures to Corbett, but he had delivered on or before March 27, 1940, his written agreement to accept $100,000 of debentures in exchange for his 1,000 shares of preferred stock, and in view of the binding legal effects of his agreement, we are unable to conclude that there was not effective issuance of the debentures to him by the petitioner on March 30, 1940. His debentures were signed by petitioner's officers on March 30, 1940, and were held for delivery to him by petitioner's bookkeeper or president on March 30, 1940. The delay in the actual delivery of the debentures was due to Corbett's delay rather than that of the petitioner. The foregoing discussion deals with the question of fact in this proceeding. In our opinion, the issue presented is a question of fact. Upon the evidence it has been found as a fact that $418,400 of debentures were issued by the petitioner in exchange for 4,184 shares of preferred stock on March 30, 1940, and that it was the intention of the stockholders, including all of the holders of the preferred stock, that the preferred stock should be retired at the close of March 30, 1940. Upon the evidence, it is deemed *388 of no consequence under the issue presented in this proceeding that the debentures bore the date of April 1, 1940. They were issued, in fact, on March 30, 1940, on which date all of the outstanding preferred stock was effectively retired. It is held that the petitioner effected a reduction in its capital before April 1, 1940, and the respondent's determination is reversed. It is unnecessary to discuss the arguments of the parties which have been made on brief [3] with respect to the interpretation of Section 45 of the Louisiana Business Corporation Act, Act 250 of Laws of 1928, as amended, in view of our conclusions upon the question of fact. The arguments have been considered, and the petitioner's contentions are approved. *389 Decisions will be entered under Rule 50. Footnotes
1. The record in this proceeding does not show the total amount of the purchase price, but the record indicates that it amounted to about $584,000.↩
2. STATE OF LOUISIANA
I, the undersigned Assistant Secretary of State, of the State of Louisiana, do hereby certify that a certified copy of an amendment to the charter of the Hemenway-Johnson Furniture Co., Inc., a corporation organized under the laws of the State of Louisiana, domiciled at Alexandria, Louisiana, showing that at a Meeting of the stockholders held on the 27th day of March, 1940, a resolution was adopted amending Article VI, fixing the capital stock at 80,000 shares of Common Stock at no par value & also amending Article VIII, and adding Article XV, the said amendment being by act before a Notary Public in and for the Parish of Rapides of date the 27th day of March, 1940, and recorded in the office of the Clerk of Court for the Parish of Rapides, in Book , Folio , on the 28th day of March, 1940, at 2:07 o'clock P.M., the date and hour the said amendment became effective, was filed in this office on this the 29th day of March, 1940, and recorded in book "Record of Charters" No. 169, Folio . Given under my signature, authenticated with the impress of my Seal of office, at the City of Baton Rouge, this, 29th day of March, A.D. 1940. [seal] /s/ H. C. Comish Assistant - Secretary of State.↩
3. It should be noted, however, that there was not introduced in evidence and made part of the record in this proceeding, the record and this Court's findings of fact in an earlier proceeding of this same petitioner, Docket No. 13648 - Hemenway-Johnson Furniture Co., Inc., which was decided on 6/23/48 under an unpublished Memorandum Findings of Fact and Opinion [7 TCM 380,]. Therefore, we may not take notice of any of the record in the earlier proceeding, as petitioner erroneously has assumed is permissible. See B. F. Edwards, 39 B.T.A. 735↩.